### SECURITY INV. CO. OF PITTSBURGH v. FIRST NAT. BANK OF BEAUMONT, TEX.

### McMULLIN v. FIRST NAT. BANK OF BEAUMONT, TEX., et al.

(Circuit Court of Appeals, Third Circuit. February 21, 1913.)

### Nos. 1,620, 1,645.

CORPORATIONS (§ 547*)—LEGALITY—PREFERENCE OF CREDITORS.

When the property of a defendant corporation was in the hands of receivers, in order to protect it from sacrifice, a plan was formulated by the creditors to grant extensions. Plaintiff, which was a creditor, obtained an extension note, which matured in about half the time of those of other creditors of the same class under the plan agreed to, and yet the note referred to such plan, and purported to be executed thereunder. Other creditors had no knowledge of such preference. *Held*, that a court would not enforce payment of such note before the time when the other notes of the same class matured, on the ground of public policy, but

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

would enjoin prosecution of an action thereon until the creditors were on an equality.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2178–2181; Dec. Dig. § 547.*]

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action at law by the First National Bank of Beaumont, Tex., against the Security Investment Company of Pittsburgh. Judgment for plaintiff, and defendant brings error. Reversed. Also suit in equity by M. K. McMullin, doing business as M. K. McMullin & Co., against the First National Bank of Beaumont, Tex., and the Security Investment Company. Decree for defendants, and complainant appeals. Reversed.

James W. Collins, of Pittsburgh, Pa., and S. O. Levinson and Chester E. Cleveland, both of Chicago, Ill., for Security Investment Co.

W. S. Moorhead and John S. Wendt, both of Pittsburgh, Pa., for First National Bank of Beaumont, Tex.

Reed, Smith, Shaw & Beal, of Pittsburgh, Pa., for M. K. McMullin.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the First National Bank of Beaumont, Tex., brought an action at law against the Security Investment Company of Pittsburgh to recover a balance of $4,263.98 on a note of the latter for $10,308.33, payable December 7, 1910. Thereafter M. K. McMullin, a creditor of said Security Company, filed a bill in equity against the Bank and the Security Company, praying the former be enjoined from prosecuting said claim to judgment until May 1, 1913, and that the Security Company be enjoined from paying said note and from giving any preference to said Bank over him and other creditors similarly situate. The Bank's demurrer thereto the court below sustained, and dismissed the bill. Thereupon McMullin took this appeal. Trial by jury having been waived in the law case, the court heard the case, and entered judgment for the claim in suit in favor of the Bank, whereupon the Security Company sued out this writ of error. In this court the cases were heard, and will be disposed of together.

The statement of claim in the law case averred inter alia that the Security Company gave and duly registered its promissory note on May 1, 1908, to the Bank, a copy of which was attached, for $10,308.34, with interest at 5 per cent., payable December 7, 1910, giving as collateral security therefor 220 shares of the assenting stock of the Westinghouse Electric & Manufacturing Company; that the Bank, in pursuance of the provisions of the note and upon its nonpayment at maturity, had, after notice, sold said stock at public sale, and realized therefrom a net balance of $7,450.30, after application of which there still remained unpaid the $4,263.98 for which suit was brought.

Without entering into detail at this point, it suffices to say the Security Company defended on the ground that the plaintiff, having as a

creditor surrendered its prior indebtedness and accepted the present note, in pursuance of a plan of composition covering all the indebtedness of said company, should not, on grounds of public policy, be permitted to enforce the same, as thereby the plaintiff would be enabled to obtain a secret preference and an undue advantage over creditors of like order. It also claimed that the Bank, having no right to enforce payment of the note in advance of the claims of other creditors, its sale of the collateral was unwarranted, and for its unlawful sale the Security Company was entitled to recover by way of certified balance, under the Pennsylvania statute, its damages of several thousand dollars.

Turning to the plaintiff's pleadings, we note, first, that what is here sought to be enforced is an executory contract in the shape of a note payable in futuro; and, secondly, that this note is not an original undertaking between the parties, but, as it states, it (together with another of like amount) is a "secured extension note," the payment of interest thereon is conditioned "as defined in the plan dated March 6, 1908," for the extension of its debt and the protection of its interest in the Westinghouse Electric & Manufacturing Company, and "this note is issued under and in pursuance of article 1 of said plan, to which reference is hereby made for a description of the rights of the registered holder hereof and of the company. For the security of this note the company has deposited with the registered holder hereof the following property, 220 shares Westinghouse Electric & Mfg. Co. assenting stock." It therefore appears by the plaintiff's own showing that it is invoking the court's aid to enforce an executory contract, and that such contract, by its own recitals, is created by a plan "for the extension of its debt and the protection of its interest in the Westinghouse Electric & Mfg. Company," and "under and in pursuance of article 1 of said plan." The plaintiff, thus seeking the aid of a court of law to enforce an executory contract which declares it was made pursuant to such extension plan, stands in the position of one affirming the plan, and of its provisions the law will take notice.

Turning, then, to such plan, it appears that on October 23, 1907, the United States Circuit Court for the Western District of Pennsylvania appointed receivers for the Security Investment Company, the defendant, into whose hands the assets of such company passed and were held by the court through such receivers for the benefit of its creditors. This action was necessary to prevent the sacrifice of its resources. Among its creditors at that time in what, under the plan referred to in the note in suit, is known as class B—that is, creditors whose collateral security was less than their indebtedness, were the complainant, McMullin, in the sum of $130,453.82, and the respondent Bank in $20,000. The Bank then held as collateral for its indebtedness 440 shares of the capital stock of the Westinghouse Electric & Manufacturing Company. On the same day the court appointed receivers for the latter company, and took over its assets. At that time the face value of the $22,000 of the Bank's said collateral was of the real value of $10,000. In order to rehabilitate the Electric Company, it was necessary, among other things, for its stockholders to furnish several mil-

lions of additional capital, and, as the Security Company owned 231,000 shares of the stock, it had to furnish its quota. To do this it was necessary for the Security Company, the bulk of whose resources consisted of said shares, to secure not only an extension of its indebtedness from its creditors, but induce them to loan to it the money necessary to aid in the rehabilitation of the Electric Company. To that end an extension plan was submitted to all its creditors, which, in general, provided for an extension by all creditors belonging to class A—that is, those holding collateral equal to or in excess of their indebtedness, who were to surrender their notes and receive in lieu thereof notes payable in three years—and all in class B were likewise to surrender their notes, and receive in lieu thereof notes payable in five years. It is therefore apparent that the plaintiff, whose indebtedness falls under class B of said plan and for which it was entitled to payment in five years, is by this note seeking to enforce payment in two years, a preference of three years over McMullin, the complainant, and all other creditors of class A, and likewise a preference of one year over all creditors in class B. It is therefore manifest that, unless some valid ground exists justifying this inequality, this action should, as prayed for by McMullin's bill, be enjoined until such time as the plan provides for the payment of all members of class B, and thus enforce that equity of equality which is the due of all creditors of like class. To justify such inequality, the Bank says this preference was given to it by the reorganization committee, that on the strength of that concession and on that alone it surrendered its note, and accepted, inter alia, the extension note in suit. To this contention the answer is, first, that such act of the committee, in virtually establishing a third class of creditors, was beyond the powers conferred upon it; and, second, that the preference given plaintiff by the committee, being unknown to McMullin and his fellow creditors, will not be enforced by the law. In the provisions defining the powers of the committee, we find no conferring of such power as was here exercised. Without entering into a discussion of the scope of the discretionary powers vested in such committee, it suffices to say that, if it had a right to exercise such power in behalf of the plaintiff, it had the right to do so for every other creditor; and to give such discretionary scope to the reorganization committee would be to substitute for the proposed plan, which was based on the equity of equality of all creditors of like class, a preferential, individual, and undisclosed inequality, the effect of which might be the premature sweeping away of the assets from all the other creditors. Such agreement for a preference as here given being unauthorized and without notice to other creditors, the law will not enforce it. McMullen v. Hoffman, 174 U. S. 654, 19 Sup. Ct. 839, 43 L. Ed. 1117, and cited in 6 Am. & Eng. Ency. Law, p. 395. And this the law does, not in relief of a defendant, but on the higher grounds of public policy. Pittsburgh v. Monongahela (C. C.) 139 Fed. 782.

The Bank contends it is not bound by the provisions of the plan because it alleges it never agreed thereto, averring that all it did was to accept the note under its express agreement, to which the Security Company by the plan committee agreed, that its indebtedness "will ma-

ture and be paid with interest as follows: One half thereof in one year from the date the plan goes into operation; the other half within two years from said date. The foregoing is conditioned on the successful consummation of the plans of reorganization, and if such plans do not go into effect, then the foregoing is void." But the manifest purpose of the Bank was to have the plan, as proposed, consummated, for without its consummation its claim was likely to be lost in large part. Indeed, to quote its own words, the stipulation was "conditioned on the successful consummation of the plans of reorganization." But coupled with this approval of a plan based on a continuation amongst all creditors of that equity of equality which the creditors already had on the assets then in the hands of the Circuit Court, this Bank, with a selfishness that was exceptional among the thousands of indulgent creditors, added the inequitable condition that the Security Company was to give it a note which was preferential, which gave it a material advantage over other creditors and which was not warranted by the plan which it desired consummated. But, in exacting such exceptional conditions, the Bank in its inequitable zeal ignored significant facts. These were that its fellow creditors, and not its debtor, were the real parties in interest in the property which was then in the hands of the court, knowledge and implied consent by whom to such a preference were requisite to its validity; and, second, that against the enforcement of such agreements between a debtor and a secretly favored creditor the law sets the stern barrier of a refusal to allow its process and powers to aid in consummating an injustice to that great number of other creditors, to whose consent for an extension on the basis that all creditors of a class should be treated alike is due the fact that to-day this great industry has been saved from disintegration and its indebtedness, including that to the plaintiff, made good.

In accordance with the views expressed, the record in the law case will be remanded, with directions that the judgment in the law case be reversed, and that judgment be entered in favor of the defendant, but without prejudice to the plaintiff, after May 1, 1913, to sue the Security Company for any balance of indebtedness, and without prejudice to the right of the Security Company, in such action or by original action, to enforce any rights or claims it may have against said Bank arising from its alleged premature sale of collateral, or its alleged failure to loan funds. In the equity case, the decree dismissing the bill is reversed and the record remitted, with directions to enter a decree overruling the demurrer, the Bank to pay the costs of both cases in this court.